Present: All the Justices

FRIENDS OF THE RAPPAHANNOCK, ET AL.

OPINION BY
v. Record No. 120874          JUSTICE LEROY F. MILLETTE, JR.
                                      June 6, 2013
CAROLINE COUNTY BOARD OF SUPERVISORS, ET AL.


FROM THE CIRCUIT COURT OF CAROLINE COUNTY
Joseph J. Ellis, Judge

The Friends of the Rappahannock ("Friends"), together with several local landowners and one lessee, (collectively, "individual complainants") appeal the order of the Circuit Court of Caroline County sustaining a demurrer and motion to dismiss to their complaint challenging a Special Exception Permit ("permit") issued by the Caroline County Board of Supervisors ("Board") that approved the use of land adjacent to the Rappahannock River for a sand and gravel mining operation. We will affirm the judgment of the circuit court dismissing the complaint for failure to allege a sufficient basis to demonstrate standing.

I. Facts and Proceedings

In 2011, the Board issued a permit, subject to certain enumerated conditions, to appellees Black Marsh Farm, Inc. and Vulcan Construction Materials, L.P., (collectively, "Black Marsh") for the development of a sand and gravel mining operation on a 514 acre tract bordering the Rappahannock River in Caroline County. Under Article IV, Section 5 of the Zoning

Ordinance of Caroline County ("zoning ordinance"), extraction of natural materials is specifically included as a permitted use in the applicable Rural Preservation District, but requires issuance of a permit. After appropriate review, the Board granted Black Marsh's application and granted a permit subject to 33 conditions pursuant to Article XVII, Section 13 of the zoning ordinance.

Friends, a non-profit organization committed to the preservation of the Rappahannock River, and the individual complainants challenged the Board's decision to issue the permit by filing a complaint entitled "Petition for Review and Complaint for Declaratory Judgment" in the Circuit Court of Caroline County. Friends alleged that Black Marsh's use of the river for product transport will interfere with and harm Friends' interests in water quality protection, preservation of the river's scenic beauty, and public education efforts in land use and resource conservation advocacy.

The complaint also alleged bases for standing for each of the individual complainants. John D. Mitchell holds a leasehold interest and a right of first refusal in property adjacent to the Black Marsh site. Mitchell uses the property for duck hunting, fishing, and river access. Mitchell complains that the land disturbance, noise and industrial activity at the site will frighten away the wildlife, prevent or deter new wildlife from

2

entering the area, and render the property useless for hunting, causing him harm.

Sally Jane Raines Kizer is the owner of 164 acres of farmland adjacent to the site. A tenant lives in Kizer's farmhouse. Kizer contends that mining activities at the site will interfere with her right-of-way to the river, make it more difficult to find tenants for the farmhouse, and create problematic noise and airborne particulate conditions. Kizer also alleges that Black Marsh's permit contains requirements that are insufficient to ensure that the pond left on the reclaimed site will not become a stagnant lake and thereby a nuisance.

The other four individual complainants, Elizabeth Lanyon Reynolds, Ronald S. Mosley, and Kurt and Brenda Kuberek live directly across the river in King George County, approximately 1,500 feet away from the Black Marsh property. Each of the complainants owns a private residence on a one-quarter to one-third acre lot in a residential development known as Hopyard Farm, and each residence is separated from the river by approximately 200 feet of open space owned by the Hopyard Farm Homeowners' Association. These individual complainants allege that the industrial activities on the site will end the scenic beauty of the location. Also, they allege that the activities will increase noise, dust, and traffic from barges and

3

commercial boats in a manner that will alter their quiet enjoyment of the area. In addition, the Kubereks allege that the industrial use of the property will harm their recreational use of the river for wading and observing wildlife, and that they are concerned for the long term health and well-being of their children, one of whom is asthmatic, from the dust and particulate pollution from the proposed operation.

In response to the complaint, the Board filed a demurrer and Black Marsh filed a motion to dismiss. The Board and Black Marsh argued that Friends and the individual complainants lacked standing to bring the suit because they failed to show they were aggrieved parties, their alleged injuries were based on speculative grievances, the facts as pled were insufficient as a matter of law to grant standing, and they were seeking to vindicate interests shared by the entire public. Friends and the individual complainants filed a memorandum in opposition to the motion to dismiss in which they argued that, under Code §§ 8.01-184 and 15.2-2285(F), they did not need to show that they are "aggrieved," but merely that they have a "justiciable interest."

After a hearing on the matter, the circuit court issued a letter opinion in which it held that Friends and the individual complainants lacked standing. In reaching this conclusion, the court accepted Black Marsh's argument that there is a two-step

4

test to determine standing: first, the court must consider the complainants' proximity to the objectionable use; and second, the court must determine whether the challenged use will deny rights or impose burdens different from those suffered by the general public. The court held that the claims alleged were not supported by sufficient facts, and that the allegations were conclusory and did not show a loss of some personal or property right "different from that suffered by the public generally."

Friends and the individual complainants declined the opportunity to amend their pleadings and the circuit court entered an order sustaining the demurrer and the motion to dismiss. Friends and the individual complainants filed a petition for appeal, which the Court granted as to two issues. In their first assignment of error, Friends and the individual complainants argue that the circuit court erred in applying the "aggrieved person" standard in evaluating whether they had standing to appeal the Board's decision to grant the permit when the complaint was filed pursuant to the Virginia Declaratory Judgment Act, which applies the "justiciable interest" test for standing. In the second assignment of error, which was granted only as to the individual complainants and not as to Friends, the individual complainants challenge the circuit court's ruling that they had alleged only "non-particularized harms" insufficient for standing.

## II. Discussion

### A. <u>Standard of Review</u>

The standard of review applicable to the circuit court's decision to sustain a demurrer is well established. "A demurrer accepts as true all facts properly pled, as well as reasonable inferences from those facts." <u>Steward v. Holland Family Props.,</u> <u>LLC</u>, 284 Va. 282, 286, 726 S.E.2d 251, 253-54 (2012). A demurrer, however, does not admit "inferences or conclusions from facts not stated." <u>Arlington Yellow Cab Co. v.</u> <u>Transportation, Inc.</u>, 207 Va. 313, 319, 149 S.E.2d 877, 881 (1966) (internal quotation marks and citation omitted).

At the demurrer stage, it is not the function of the trial court to decide the merits of the allegations set forth in a complaint, but only to determine whether the factual allegations pled and the reasonable inferences drawn therefrom are sufficient to state a cause of action. <u>Riverview Farm Assocs.</u> <u>Va. Gen. P'ship v. Bd. of Supervisors of Charles County</u>, 259 Va. 419, 427, 528 S.E.2d 99, 103 (2000). To survive a challenge by demurrer, a pleading must be made with "sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." <u>Eagle Harbor, L.L.C. v. Isle of Wight County</u>, 271 Va. 603, 611, 628 S.E.2d 298, 302 (2006) (internal quotation marks omitted). "A trial court's decision sustaining a demurrer

6

presents a question of law which we review de novo."  Harris v.

Kreutzer, 271 Va. 188, 196, 624 S.E.2d 24, 28 (2006).

B.    Whether the Circuit Court Erred in Applying the "Aggrieved
      Person" Standard to Determine Standing

Friends and the individual complainants argue that the

appropriate analysis of standing in declaratory judgment

actions, as expressed in Cupp v. Board of Supervisors of Fairfax

County, 227 Va. 580, 590, 318 S.E.2d 407, 412 (1984), is whether

the complaining party has a "justiciable interest" in the

subject matter of the suit.  Thus, Friends and the individual

complainants contend that the circuit court inappropriately

applied an "aggrieved person" standard to the declaratory

judgment action in the case at bar because such a standard is

not present in either the Court's precedent or within the

language of Code §§ 8.01-184 or 15.2-2285(F).[*]  Further, they

contend that our decision in Braddock, L.C. v. Board of

_____

[*] Under Code § 15.2-2285(F), a decision of a Board of Supervisors in granting or failing to grant a special exception may be challenged in the circuit court:

> Every action contesting a decision of the
> local governing body adopting or failing to
> adopt a proposed zoning ordinance or
> amendment thereto or granting or failing to
> grant a special exception shall be filed
> within thirty days of the decision with the
> circuit court having jurisdiction of the
> land affected by the decision. However,
> nothing in this subsection shall be
> construed to create any new right to contest
> the action of a local governing body.

7

Supervisors of Loudoun County, 268 Va. 420, 601 S.E.2d 552 (2004), in which we discussed a requirement that neighbors bringing suit to challenge rezoning be "aggrieved" to have standing, and upon which Black Marsh relies, is irreconcilable with the authorities on which it is based.

Black Marsh, however, argues that the "justiciable interest" and "aggrieved person" standards are not incompatible with each other in a land use case. Black Marsh therefore contends that the circuit court did not err in defining a justiciable controversy by using an "aggrieved person" standard, and argues that the term "aggrieved" requires having a sufficient proximity to the property subject to the land use decision and an allegation of particularized harm not shared by the general public.

Implicit in the argument of Friends and the individual complainants is the contention that an "aggrieved person" standard provides for a more restrictive basis for standing than the requirement of a justiciable interest in a declaratory judgment action in the challenge of a land use decision. We disagree.

We have recently addressed the general principles requiring a complainant to assert a justiciable controversy for a circuit court to exercise its authority in a declaratory judgment action. See Charlottesville Area Fitness Club Operators Ass'n

v. Albemarle County Bd. of Supervisors, 285 Va. 87, 737 S.E.2d 1 (2013).  Code § 8.01-184, the "statutory authority for declaratory judgment proceedings," authorizes jurisdiction "[i]n cases of actual controversy."  Charlottesville Area Fitness, 285 Va. at 97-98, 737 S.E.2d at 6.  As "[t]he purpose of a declaratory judgment proceeding is the adjudication of rights[,] an actual controversy is a prerequisite to a court having authority."  Id. at 98, 737 S.E.2d at 6.  The pleadings, therefore, must allege an "actual controversy" existing between the parties based upon an "actual antagonistic assertion and denial of right."  Code § 8.01-184; see also Charlottesville Area Fitness, 285 Va. at 98, 737 S.E.2d at 6.

A complainant "must establish a justiciable interest by alleging facts demonstrat[ing] an actual controversy . . . such that [the complainant's] rights will be affected by the outcome of the case."  Charlottesville Area Fitness, 285 Va. at 98, 737 S.E.2d at 7 (second alteration added) (internal quotation marks omitted); see also Cupp, 227 Va. at 590, 318 S.E.2d at 412 (holding that the parties had a direct stake in challenging an ordinance applicable to their nursery business because the ordinance would have impacted what they could sell in their business and required donation of a portion of their land to the county); Board of Supervisors v. Fralin & Waldron, Inc., 222 Va. 218, 224, 278 S.E.2d 859, 862 (1981) (determining that an option

9

holder on certain land sales contracts had standing to challenge rezoning of the property on which it held options); but see Deerfield v. City of Hampton, 283 Va. 759, 766, 724 S.E.2d 724, 727 (2012) (holding that a committee formed under the city charter had no standing because it had no rights under the charter to file suit challenging a proposed land use after the purpose for which the committee had been formed had ceased to exist).

The cases cited above address the "justiciable interest" requirement in declaratory judgment actions challenging land use decisions. The particular statutory requirement, however, for standing in the context of a challenge to a land use decision by a board of zoning appeals is that the party be aggrieved:

> Any person or persons jointly or severally aggrieved by any decision of the board of zoning appeals, or any aggrieved taxpayer or any officer, department, board or bureau of the locality, may file with the clerk of the circuit court for the county or city a petition . . . specifying the grounds on which aggrieved within 30 days after the final decision of the board.

Code § 15.2-2314 (emphasis added.) Although the text of Code § 15.2-2314 refers only to a board of zoning appeals, we have previously applied the same standard to actions originating from land use decisions made by local governing bodies. See Deerfield, 283 Va. at 762, 767, 724 S.E.2d at 725, 728 (applying the "aggrieved person" standard to a city's decision to allow a

10

development of a residential subdivision on a portion of a beach); Braddock, 268 Va. at 422-25, 601 S.E.2d at 552-54 (applying the "aggrieved person" standard to a party's challenge to a board of supervisors' denial of its application to rezone two tracts of land). Additionally, we have stated that it would be inconsistent to interpret the statutory section governing appeals from boards of supervisors differently from the statutory section governing appeals from boards of zoning appeals. Friends of Clark Mtn. Found. v. Board of Supervisors of Orange County, 242 Va. 16, 22, 406 S.E.2d 19, 22 (1991).

We further disagree with complainants' argument that Braddock is inconsistent with the authorities on which it is based. In that case, when Braddock challenged a board of supervisors' denial of its application to rezone two tracts of land, we first considered whether Braddock had an ownership interest in the subject property. 268 Va. at 422-23, 601 S.E.2d at 552-53. We then addressed whether Braddock, as a non-owner, nonetheless had standing. In determining that Braddock, as a non-owner, had no standing to challenge the denial of rezoning, we indicated that "a party, to have standing, must show that he has been aggrieved by the judgment or decree appealed from." Id. at 425, 601 S.E.2d at 554 (emphasis added) (internal quotation marks and citation omitted). Because Braddock did not have an interest in the entire property subject to rezoning at

11

the time of the filing of the suit, having assigned its right to purchase a portion of the land, and subsequently having neither a proprietary or a legal right affected by the rezoning, it "was not injuriously affected by the Board's refusal to rezone." Id. at 426, 601 S.E.2d at 554.

We affirmed in a recent case that the "aggrieved person" standard is appropriate in the context of a challenge to a land use decision by means of a declaratory judgment action. See Deerfield, 283 Va. at 762, 767, 724 S.E.2d at 725, 728. In Deerfield, appellants, members of the Committee of Petitioners of the Buckroe Beach Bayfront Park Petition, initiated a declaratory judgment action challenging the City's decision to allow the development of a residential subdivision on a portion of Buckroe Beach. Id. at 761-62, 724 S.E.2d at 725. In reaching our conclusion, we employed both the declaratory judgment "justiciable interest" language and the "aggrieved person" standard. We held that the Committee lacked standing because it did not maintain an "ongoing justiciable right or interest that could be aggrieved by the development of the Buckroe Beach Property such as would give rise to legal standing by the Committee to challenge the development in a declaratory judgment action." Id. at 767, 724 S.E.2d at 728 (emphasis added.)

12

As evidenced by our analysis herein, any distinction between an "aggrieved party" and "justiciable interest" is a distinction without a difference in declaratory judgment actions challenging land use decisions.  Accordingly, the circuit court did not err in applying the "aggrieved person" standard to determine standing in Friends and the individual complainants' declaratory judgment action challenging the Board's land use decision.

C.    Whether Pleadings Sufficient to Allege Standing

To show a justiciable controversy sufficient to establish a claim for declaratory judgment, the individual complainants must articulate legally enforceable rights, and courts must be able to evaluate those claims of right.

Unlike a challenge to a land use decision by a party claiming an ownership interest in the subject property where the affected property right is readily apparent, a party who claims no ownership interest in the subject property has standing to file a declaratory judgment action challenging the land use decision only if it can satisfy a two-step test.  First, the complainant must own or occupy "real property within or in close proximity to the property that is the subject of" the land use determination, thus establishing that it has "a direct, immediate, pecuniary, and substantial interest in the decision."

Virginia Beach Beautification Comm'n v. Board of Zoning Appeals, 231 Va. 415, 420, 344 S.E.2d 899, 902-03 (1986).

Second, the complainant must allege facts demonstrating a particularized harm to "some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally." Virginia Marine Res. Comm'n v. Clark, 281 Va. 679, 687, 709 S.E.2d 150, 155 (2011) (internal quotation marks omitted); see also Virginia Beach Beautification Comm'n, 231 Va. at 419-20, 344 S.E.2d at 903 (indicating that complainants must demonstrate that they stand to suffer a particularized harm not shared by the general public). Complainants do not need to establish that the particularized harm has already occurred. Charlottesville Area Fitness, 285 Va. at 98, 737 S.E.2d at 11-12 ("The General Assembly created the power to issue declaratory judgments to resolve disputes before the right is violated.") (internal quotation marks omitted). Absent an allegation of injury or potential injury not shared by the general public, complainants have not established standing to bring a declaratory judgment action in a land use case.

When applying these requirements to the case at bar, and assuming without deciding that the individual complainants all hold property interests sufficiently proximate to the Black Marsh site, each is still required to plead facts sufficient to

14

claim particularized harms to rights not shared by the general public. It is in this requirement that the pleading of each individual complainant fails.

The site in question was already zoned for industrial use, and sand and gravel extraction activities are permitted subject to any conditions imposed by the permit approved by the Board. The individual complainants have not tied their allegations of harm to any activity of Black Marsh, either by reference to the inadequacy of the conditions imposed by the permit or otherwise. Although the individual complainants presented conclusory allegations as to possible harms, the general objections pled by the individual complainants present no factual background upon which an inference can be drawn that Black Marsh's <u>particular</u> use of the property would produce such harms and thus impact the complainants. Thus, the individual complainants have not met their burden to provide sufficient facts in their complaint to allege how this particular use, Black Marsh's sand and gravel extraction site, causes the loss of some personal or property right belonging to the individual complainants different from the public in general.

Indeed, the individual complainants failed to offer <u>any</u> factual background from which to infer that the proposed mining operation would cause sufficient noise, particulate matter, or pollution <u>off site</u> to cause actual harm. Rather, the permit

15

attached to the complaint imposing conditions for operation of the project requires that Black Marsh adhere to county restrictions regarding pollution, particulate matter, and noise. The individual complainants do not allege any facts to indicate that the conditions imposed by the permit would be inadequate to protect their property rights.

The individual complainants rely heavily on Riverview, in which we recognized that certain landowners had standing, noting that their location within 2,000 feet of the proposed use meant that they lived within sufficient proximity to have a "justiciable interest."  Riverview, 259 Va. at 427, 528 S.E.2d at 103.  As we have reiterated today, however, proximity alone is insufficient to plead a "justiciable interest" in a declaratory judgment action appealing a land use decision.  To demonstrate standing, a complaint must also allege sufficient facts showing harm to some personal or proprietary right different than that suffered by the public generally.

Unlike the Black Marsh site, the property in question in Riverview was not already zoned for industrial use, but rather commercial use, and the land use decision complained of was a rezoning.  Id. at 422-23, 528 S.E.2d at 100-01.  Furthermore, plaintiffs in Riverview included in their complaint a laundry list of particularized harms, including:  (1) that they already experienced noise and disturbances from the 300 trucks a day on

16

adjacent roadways, which number would double to up to 600 under the proposal; (2) that the United States Coast Guard had conducted a study indicating that liquid leakage, "garbage juice," was draining off of a barge and into the river; and (3) that Virginia Department of Environmental Quality officials found contaminated liquid spilling from garbage containers being loaded onto barges.  Second Amended Complaint at 12, 18-19, Riverview Farm Assocs. v. Board of Supervisors, 259 Va. 419, 528 S.E.2d 99 (2000) (Record No. 990853).

Here, the complaint filed by the individual complainants, who were given leave to amend but decided against amendment, does not allege any factual basis for the individual complainants' concerns of off-site effects caused by the sand and gravel operation.  As a result, we conclude that the individual complainants have failed to meet their burden of alleging the particularized harms required to survive a demurrer.

## III.  Conclusion

For the reasons stated, we hold that the circuit court did not err in applying the aggrieved party standard in determining standing in a declaratory judgment action challenging a local governing body's land use decision.  We further hold that, based upon the insufficiency of allegations in their complaint, the

individual complainants did not have standing to proceed.  Thus, we will affirm the circuit court's judgment.

Affirmed.
