PRESENT:  All the Justices

THE BANK OF HAMPTON ROADS, ET AL.[1]

                                                       OPINION BY

v.  Record No. 151190                    CHIEF JUSTICE DONALD W. LEMONS

                                                     June 2, 2016

ETHEL B. POWELL

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Marjorie A. T. Taylor Arrington, Judge

In this appeal, we consider whether the trial court erred in imposing a constructive trust upon a subdivision lot after a developer breached a contract to convey a different property.

I.   Facts and Proceedings

Ethel B. Powell ("Powell") owned a house and a parcel of land on Waters Road in the City of Chesapeake, Virginia.  In 2003, a subdivision development company, 3 MAC II, LLC ("3 MAC") approached Powell with an offer to purchase her property.  3 MAC and its manager-members[2] sought to develop a subdivision to be known as North Rollingwood Estates, and they wanted to include Powell's land in the subdivision.  The Bank of Hampton Roads ("Bank") extended loans for 3 MAC to acquire the land and develop the subdivision.

On November 7, 2003, Powell signed a contract to convey her property to 3 MAC in exchange for $265,000 and "one (1) lot to be mutually agreed upon by both Buyer and Seller in writing."  Powell conveyed her land to 3 MAC on May 11, 2004.  Thereafter, on January 28, 2005, Powell and 3 MAC prepared an addendum to the contract stipulating that Powell would

---

[1] Appellants include Jack W. Gibson and Julie R. Anderson ("Trustees") in their capacity as Trustees under a Credit Line Deed of Trust encumbering the property at issue in this case.

[2] 3 MAC's manager-members were Anthony Sancilio ("Sancilio"), Michael Hanley ("Hanley") and Charles Hostetler ("Hostetler").

receive the lot designated as Lot 1 on the preliminary subdivision plat for North Rollingwood Estates.[3]

On several occasions over the next few years, Powell allegedly asked 3 MAC and its member-managers to convey Lot 1 to her in accordance with the contract. In her complaint, Powell claimed that Sancilio "repeatedly assured [her] that he was going to make the conveyance but continually fabricated on[e] excuse after the other…." Instead of fulfilling its contractual obligation to convey Lot 1 to Powell, 3 MAC negotiated to sell the same lot to Ashdon Builders, Inc. ("Ashdon"). On February 15, 2012, Ashdon purchased Lot 1 for $110,000.

Upon learning that 3 MAC had sold Lot 1, Powell brought suit in the Circuit Court of the City of Chesapeake ("trial court") against 3 MAC, Ashdon, Hostetler, Hanley, and several others. Although the Bank was not named in Powell's first complaint, Powell later amended her complaint to add the Bank as a co-defendant. Powell's complaint alleged breach of contract and fraudulent conveyance. Powell also sought the imposition of a constructive trust upon Lot 1. On February 28, 2013, Powell settled her claim against Ashdon.[4] Upon request of both parties, the trial court dismissed Powell's claim against Ashdon with prejudice, thereby releasing Powell's claim to Lot 1.

Powell continued to pursue her claims against 3 MAC and the Bank. Since she could no longer assert a claim against Lot 1, Powell asked the trial court to impose a constructive trust upon the remaining land owned by 3 MAC and which had not yet been sold. This remaining property, known as "Lot A," was subject to the Bank's recorded first-lien deed of trust, and

---

[3] The final subdivision plat was recorded with the City of Chesapeake on July 22, 2008. However, Powell never recorded her contract with 3 MAC or her designation of Lot 1.

[4] Although the record contains no evidence of the Powell-Ashdon settlement, BHR alleges that Powell released her claim against Lot No. 1 in exchange for a payment of $25,000 and Powell has not disputed that allegation.

Powell sought imposition of a constructive trust upon Lot A superior to the Bank's deed of trust. After a bench trial, the trial court held that the Bank had actual knowledge of Powell's right to a lot in the subdivision, and that the Bank's "wrongdoing robbed [Powell] of possession of the original lot specified in her contract" with 3 MAC. The trial court held that Powell had established, by clear and convincing evidence, that she was entitled to a constructive trust upon Lot A.

The Bank filed a motion to reconsider which was denied by the trial court, and the trial court entered final judgment against the Bank, 3 MAC and its manager-members. In its Final Judgment Order the trial court imposed a constructive trust upon Lot A and further decreed that,

> 3MAC II, LLC shall convey said property to Plaintiff free and clear of any liens or encumbrances and Defendants Bank of Hampton Roads, Jack W. Gibson, Trustee and Julie R. Anderson, Trustee shall release any lien, encumbrance or claim to said property

However, the trial court imposed an additional and unusual conditional form of relief that provided,

> if Plaintiff does not receive [Lot A] pursuant to the constructive trust then Plaintiff shall have judgment against Defendants 3 MAC II, LLC, Charles V. Hostetler and Michael W. Hanley, jointly and severally, in the amount of $110,000.

Only the Bank and the Trustees timely filed a petition for appeal and we granted the appeal on the following seven assignments of error:

1. The trial court erred in creating a constructive trust in favor of Plaintiff upon Lot A, as there was no basis for creating a constructive trust and Plaintiff's contract only entitled her to Lot No. 1.

2. The trial court erred in failing to treat [the Bank] as a bona fide purchaser under the law, where the record demonstrated that [the Bank] had no actual or constructive notice of Plaintiff's rights in Lot No. 1.

3. The trial court erred in holding that Plaintiff had a right to Lot A, as she only contracted to receive Lot No. 1 from the other defendants and each piece of property is treated as unique under the law.

4. The trial court's ordering 3 MAC to convey lot A to Plaintiff free and clear of [the Bank's] First Lien Deed of Trust and ordering [the Bank], Gibson, and Anderson to release [the Bank's] Deed of Trust recorded against Lot A constituted an improper remedy.

5. The trial court erred in imposing a constructive trust upon Lot A superior to [the Bank's] First Lien Deed of Trust where Plaintiff had an adequate remedy at law in the monetary judgment she received against the other defendants.

6. The trial court erred in failing to consider or credit the $25,000 amount received by Plaintiff as settlement from Ashdon Builders, Inc. for Plaintiff's release of her claim against Lot No. 1.

7. The trial court erred in failing to vacate the March 3, 2015 Opinion pursuant to the request in [the Bank's] Motion to Reconsider and Brief in Support.

II. Analysis

A. Standard of Review

A constructive trust is an equitable remedy which is created by operation of law to prevent a fraud or injustice. See Leonard v. Counts, 221 Va. 582, 589, 272 S.E.2d 190, 195 (1980). Accordingly, a trial court's decision to impose a constructive trust presents a mixed question of law and fact which we review de novo. See Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co., 270 Va. 566, 574, 621 S.E.2d 114, 118 (2005). However, we consider all facts in the light most favorable to Powell, the prevailing party below. See Caplan v. Bogard, 264 Va. 219, 225, 563 S.E.2d 719, 722 (2002).

B. Constructive Trust

Assignments of error one, three, four, and five all concern the trial court's creation of a constructive trust upon Lot A in favor of Powell. The Bank argues that the trial court erred in imposing a constructive trust because Powell had no contractual right to Lot A. The Bank contends that Powell cannot "distinctly trace" her interest to Lot A because her contract with 3 MAC designated Lot 1, not Lot A, which is a unique and distinct property under the law. Powell responds that 3 MAC contracted to convey "one (1) lot to be mutually agreed upon" in the North

4

Rollingwood Estates subdivision. Since Lot 1 was no longer available, Powell argues that the trial court correctly imposed a constructive trust so that she would receive Lot A, the only remaining parcel of land in the subdivision still owned by the subdivision development company.

We have held that "[c]onstructive trusts arise, independently of the intention of the parties, by construction of law; being fastened upon the conscience of him who has the legal estate, in order to prevent what otherwise would be a fraud." Faulknier v. Shafer, 264 Va. 210, 215, 563 S.E.2d 755, 758 (2002) (citations omitted). Furthermore, "in order to be entitled to the benefit of a constructive trust, a claimant's [interest] must be 'distinctly traced' into the chose in action, fund, or other property which is to be made the subject of the trust." Crestar Bank v. Williams, 250 Va. 198, 204, 462 S.E.2d 333, 335 (1995).

Crestar involved multiple victims of an investment fraud who sought recovery against the few remaining assets of the man who perpetrated what was essentially a Ponzi scheme. Id. at 201-04, 462 S.E. 2d at 334-35. We held that the trial court erroneously imposed a constructive trust in favor of the defrauded investors because the investors failed to distinctly trace the funds they had invested into the remaining assets. Id. at 204, 462 S.E.2d at 336.

Although the investors had undeniably suffered significant losses of nearly half a million dollars, the trial court in Crestar erred by creating a constructive trust and granting the investors priority over all record and judgment creditors. We held that:

> [t]he record is devoid of proof, by clear and convincing evidence, distinctly tracing the investors' money into any of the properties that are the subject of the constructive trust. Thus, the claim of each investor-beneficiary for breach of trust becomes merely that of a general creditor.

Id.

5

Likewise, in this case, Powell failed to distinctly trace her claim to the property that was the subject of the constructive trust. As amended in 2005, Powell's contract with 3 MAC provided that she would receive a particular subdivision lot, designated as Lot 1. Yet ten years later, the trial court imposed a constructive trust upon Lot A – a different lot within the subdivision. We have held that "land always has, in the eye of the law, a peculiar value." Hale v. Wilkinson, 62 Va. (21 Gratt.) 75, 80 (1871). See also Ndeh v. Midtown Alexandria, L.L.C., 300 Fed. Appx. 203, 207 (4th Cir. 2008) ("Under Virginia law, every piece of real estate is unique."). Unlike money, land is not fungible. Therefore, even if Lot 1 and Lot A were identical in shape and size, Powell would have no equitable claim to Lot A.

After her choice of lot in 2005, Powell's interest lay with Lot 1, not with Lot A. In 2012, when it sold Lot 1 to Ashdon, 3 MAC breached its contract with Powell. Consequently, Powell was entitled to damages. But a constructive trust is an equitable remedy available under specific conditions and when legal remedies, such as monetary damages, would be insufficient. Accordingly, we hold that the trial court erred when it imposed a constructive trust upon Lot A. [5] However, the trial court's award of $110,000 in damages against 3 MAC, Hostetler, and Hanley is proper.

### C. Bona Fide Purchaser Status

Because the trial court erred in imposing a constructive trust upon Lot A, the issue whether the Bank was a bona fide purchaser is no longer relevant. This case involved a breach of contract to convey a specific parcel of land, known as Lot 1. The appropriate relief was an

---

[5] Our approach is consistent with the Restatement (Third) of Restitution and Unjust Enrichment § 55 (2011) which describes the "tracing requirement" necessary for a constructive trust. Although we do not adopt the Restatement, we do embrace the reasoning that "[a] claimant who can show unjust enrichment, but who cannot identify such property in the hands of the defendant, is not entitled to the remedy of constructive trust." Id. at cmt. g.

award of money damages, an order of specific performance, or the imposition of a constructive trust upon Lot 1, not a constructive trust upon Lot A, which was an entirely different parcel. Therefore, it is unnecessary for us to address the Bank's second assignment of error.

## D. Setoff

In its sixth assignment of error the Bank challenges the trial court's failure to reduce Powell's $110,000 judgment by the $25,000 which she allegedly received from Ashdon to settle her claim against Lot 1. Powell's $110,000 judgment is against 3 MAC, Hostetler, and Hanley – not against the Bank. The Bank was never the subject of a monetary judgment against it. After resolution of the constructive trust issue, the issue of setoff no longer affects the Bank. The Bank is not aggrieved and lacks standing to challenge the trial court's failure to reduce the money judgment against 3 MAC, Hostetler, and Hanley. See generally Friends of the Rappahannock v. Caroline Cnty. Bd. of Supervisors, 286 Va. 38, 45-49, 743 S.E.2d 132, 135-37 (2013); Braddock, L.C. v. Board of Supervisors of Loudoun Cnty., 268 Va. 420, 425-26, 601 S.E.2d 552, 554 (2004).

## E. Motion for Reconsideration

Having resolved assignments of error one through six, we need not address the seventh assignment of error which concerns the Bank's motion for reconsideration in the trial court.

## III. Conclusion

For the reasons stated, we will reverse the trial court's judgment to impose a constructive trust upon Lot A, and we will enter final judgment for Powell in the amount of $110,000 against 3 MAC, Hostetler, and Hanley.

Reversed and final judgment.

7