## PEOPLES SECURITY LIFE INSURANCE COMPANY

### V.

## DELORES R. ARRINGTON

Record No. 910177

January 10, 1992

Present: All the Justices

*Robert B. Delano, Jr. (Albert M. Orgain, IV; William Tyler Shands; Sands, Anderson, Marks & Miller*, on briefs), for appellant.

*Andrew W. Wood (Kimberley A. Williamson; Wood and Wood*, on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

In this appeal we consider whether the common law doctrine that no person should be permitted to profit by his own wrong has been superseded by Title 55, Chapter 22, entitled "Acts Barring Property Rights," Code §§ 55-401 to -415. Acts 1981, ch. 469.

On March 13, 1988, Charles Arrington was stabbed and shot to death while he and his wife, Delores, were in their automobile. No one has been prosecuted for the murder of Mr. Arrington. However, Mrs. Arrington remains available for prosecution.

Mrs. Arrington was the beneficiary of an insurance policy on the life of her deceased husband, issued by Peoples Security Life Insurance Company (Peoples) in the amount of $50,000. When Peoples refused to pay the proceeds of the policy to Mrs. Arrington, alleging that she had "procured, participated in or otherwise directed the felonious killing of Charles E. Arrington," she filed this action.

The trial court granted Mrs. Arrington's motion for summary judgment, holding that the General Assembly had abrogated the

common law rule and limited its application to those situations specifically covered by the statute. Since Mrs. Arrington was not within the definition of "slayer" contained in Code § 55-401(1), the court held that she was not precluded from recovering the proceeds of the life insurance policy.

Peoples appeals, arguing that the General Assembly has not abrogated the common law maxim and that Mrs. Arrington is not entitled to the proceeds of the insurance policy if Peoples can prove, by a preponderance of the evidence, that she "procured, participated in or otherwise directed" the death of her husband. Mrs. Arrington replies that the court is foreclosed from applying the common law rule in circumstances not specified in Code §§ 55-401 to -415.

Since 1919, the General Assembly has enacted and amended statutes dealing with the ability of a person to acquire a property interest as a result of his wrongful acts. At times, the statute spoke only of interests gained through inheritance, and did not mention proceeds flowing from insurance policies. *But see* Code § 64-18; Acts 1962, ch. 295 (adding reference to insurance proceeds). Similarly, the category of wrongdoer to whom the statute applies has been identified in various ways: one who "killed" another, Code § 64-18; one who was "convicted of murder," Acts 1950, ch. 288; and, one who has not been convicted and who "has not been acquitted and is not available for prosecution by reason of his death by suicide or otherwise, who is determined by a court of appropriate jurisdiction by a preponderance of the evidence to have murdered the decedent," Code § 55-401(1)(ii).

■ These statutory changes reflect specific instances which the legislature chose to address. As presently written, the statute addresses circumstances where a person has been convicted or acquitted, or is unavailable for prosecution for the crime. The statute does not address the factual situation presented in the instant case — a person who neither has been acquitted nor convicted of the murder, but is available for prosecution.

We considered an analogous situation in *Sundin v. Klein*, 221 Va. 232, 269 S.E.2d 787 (1980), involving a right of survivorship in property acquired as a result of a death by homicide. The argument was made that, because former Code § 64.1-18, a precursor to the statutes in issue here, specified some types of property rights, but not the right of survivorship, the court could not apply

common law principles and provide a remedy for survivorship interests acquired by homicide. We rejected this argument:

> To say this, however, suggests that the General Assembly condones the acquisition by murder of all property rights not mentioned in Code § 64.1-18. We know that such a proposition cannot be true. Indeed, we believe . . . further that it is the duty of this court to attempt to give effect to the pronounced public policy by fashioning a remedy to protect the specific interest at issue in this case.

*Sundin* v. *Klein*, 221 Va. at 235, 269 S.E.2d at 788.

Subsequent to our decision in *Sundin*, the General Assembly replaced Code § 64.1-18 with Code §§ 55-401 to -415. Even though the new statutes treat the subject in a more comprehensive manner, to alter or abrogate the common law policy, the General Assembly must manifest its intent to do so. *Hyman* v. *Glover*, 232 Va. 140, 143, 348 S.E.2d 269, 271 (1986).

Our review of the legislation, including the 1987 amendments to the definition of "slayer" in Code § 55-401(1)(ii), reveals no express language overriding the common law, nor is such an intent manifest. Indeed, Code § 55-414 specifically states that the statutes are to be construed to effectuate "the policy of this Commonwealth that no person shall be allowed to profit by his own wrong." This pronounced public policy, that no person should be allowed to profit from his wrongful acts, has been reaffirmed, not abrogated, by the General Assembly. Accordingly, we hold that under these circumstances, Code § 55-401(1) does not preclude Peoples from attempting to establish that Mrs. Arrington was not entitled to the proceeds of her husband's life insurance policy if it can prove by a preponderance of the evidence that she "procured, participated in or otherwise directed" her husband's death.

In light of our holding, we also consider whether the trial court properly granted Mrs. Arrington's motion to quash the subpoena Peoples requested for her medical records.

Since Mrs. Arrington's physical or mental condition is not in issue, the physician-patient privilege protects these medical records from disclosure requests unless the court, "in the exercise of sound discretion, deems such disclosure necessary to the proper administration of justice." Code § 8.01-399. While the record

does not disclose whether the trial judge was requested to, or did, review the medical records *in camera*, Peoples has presented no rationale for disclosure of the records other than "to see what information, if any, those medical records contained relating to the murder of Arrington's husband and her involvement therein." We cannot say, based on this single statement, that the administration of justice required disclosure of Mrs. Arrington's medical records and, therefore, that the trial judge abused his discretion. Accordingly, we will affirm the trial court's action in this regard.

For the reasons stated above, we will affirm in part and reverse in part the judgment of the trial court, and remand the case for further proceedings consistent with this opinion.

> *Affirmed in part,*
> *reversed in part,*
> *and remanded.*